97 P.3d 886

Barbara ARAGON, Petitioner,

v.

The Honorable Michael O. WILKINSON, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF MARICOPA, Respondent Judge,

State of Arizona, ex rel. Richard M. Romley, Maricopa County Attorney, Real Party in Interest.

No. 1 CA–SA 04–0183.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 21, 2004.

As Amended Oct. 1, 2004.

James J. Haas, Maricopa County Public Defender By Jason Rosell, Deputy Public Defender, Phoenix, Attorneys for Petitioner.

Richard M. Romley, Maricopa County Attorney By Faith C. Klepper, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

## OPINION

TIMMER, Presiding Judge.

¶ 1 Barbara Aragon filed this special action petition arguing that the trial court abused its discretion by granting the State's motion to withdraw from a plea agreement that the court had previously accepted. To resolve this issue, we must decide whether the United States Supreme Court's recent decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), coupled with Aragon's refusal to waive her right to a jury trial on the existence of factors sufficient to allow the court to impose an aggravated sentence, justified the State's motion to withdraw from the plea agreement. By separate order, we previously accepted jurisdiction and granted relief, concluding that the trial court erred by granting the State's motion. We additionally stated that this opinion would follow.

## BACKGROUND

¶ 2 The State indicted Aragon on one count of attempted first-degree murder, a class 2 dangerous felony, after she shot her apartment manager four times. At a settlement conference held on May 24, 2004, Aragon and the State entered a plea agreement in which Aragon agreed to plead guilty to attempted second-degree murder. The parties agreed that the court would sentence Aragon within the sentencing range for attempted second-degree murder, which is the same range for attempted first-degree murder: seven to twenty-one years' imprisonment with ten and one-half years' imprisonment being the presumptive sentence. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 13–604(I), 1001(C), 1104(B), 1105(C). In addition, the parties stipulated that Aragon must forfeit her weapon, submit to DNA testing, and pay restitution in an amount not to exceed $2,000,000. According to Aragon, she entered the agreement in order to avoid putting the victim through the trauma of a trial. The court accepted the plea agreement at the settlement conference and scheduled a sentencing hearing for July 9.

¶ 3 On June 24, the United States Supreme Court, applying *Apprendi v. New Jersey,* 530

U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), held that the Sixth Amendment to the United States Constitution prohibits a trial court from imposing a sentence greater than the maximum permitted "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" unless a jury also finds beyond a reasonable doubt facts, other than the existence of prior convictions, that may support imposition of a greater sentence. *Blakely,* 124 S.Ct. at 2536–37 (emphasis omitted). In light of *Blakely,* the State asked Aragon to amend the plea agreement by signing a waiver of her Sixth Amendment right to have a jury determine facts that may support imposition of an aggravated sentence, but she declined to do so.

¶ 4 On July 9, at the scheduled sentencing hearing, the court indicated that it would like to impose a sentence greater than the presumptive term due to the severity of the victim's injuries, but that it could not do so because *Blakely* mandated that the maximum sentence it could impose, absent jury findings, was the presumptive term of imprisonment. Due to this limitation, the State orally moved the court to withdraw from the plea agreement. Aragon's counsel objected, and after hearing oral argument on July 23, the court granted the State's motion to withdraw. This special action followed.

### SPECIAL ACTION JURISDICTION

¶ 5 We accept jurisdiction of this special action because Aragon lacks an equally plain, speedy or adequate remedy by appeal. Ariz. R.P. Spec. Act. 1(a); *Nalbandian v. Superior Court,* 163 Ariz. 126, 130, 786 P.2d 977, 981 (App.1989) (normal method of review for criminal interlocutory order is special action). Additionally, Aragon raises constitutional issues of first impression and statewide importance that likely will recur as the trial court grapples with the impact of *Blakely. Martin v. Reinstein,* 195 Ariz. 293, 300, ¶ 9, 987 P.2d 779, 786 (App.1999); *Vo v. Superior Court,* 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992).

### DISCUSSION

¶ 6 Aragon argues that the court erred by granting the State's motion because the court had previously accepted the guilty plea and jeopardy had attached. Thus, the court could not now try Aragon on the original charge without violating the double jeopardy provisions of the federal and state constitutions. U.S. Const. amend. V; Ariz. Const. art. 2, § 10; *Dominguez v. Meehan,* 140 Ariz. 329, 681 P.2d 912 (App.1983), *approved,* 140 Ariz. 328, 681 P.2d 911 (1984); *Coy v. Fields,* 200 Ariz. 442, 444, ¶ 5, 27 P.3d 799, 801 (App.2001). The State counters that the court properly permitted the State to withdraw from the agreement pursuant to applicable court rules, the terms of the plea agreement, and well-accepted principles of contract law. We will defer to the court's findings of fact but review de novo its conclusions of law. *State v. Secord,* 207 Ariz. 517, 520 ¶ 5, 88 P.3d 587, 590 (App.2004).

¶ 7 We begin by examining general principles applicable to plea agreements. Once the State and a defendant have entered a plea agreement, the trial court may reserve acceptance of a plea until a later date, or it may accept the plea agreement at a change of plea hearing. *Dominguez,* 140 Ariz. at 331, 681 P.2d at 914. If the court reserves acceptance of a plea agreement "it may reject it if it finds the disposition available unacceptable," or for other reasons, such as an inadequate factual basis. *Id.* In that situation, jeopardy does not attach. *Id.* Alternatively, if the court accepts the guilty plea, jeopardy attaches and the State, with exception, may not unilaterally withdraw from the plea agreement. *Id.; Coy,* 200 Ariz. at 444, ¶ 5, 27 P.3d at 801. The trial court, in its discretion, may allow a defendant to withdraw a plea of guilty or no contest "when necessary to correct a manifest injustice." Ariz. R.Crim. P. 17.5.

¶ 8 Even after jeopardy has attached, the trial court retains discretion to reject the sentencing provisions proposed by the plea agreement. Ariz. R. Crim P. 17.4(d); *Smith v. Superior Court,* 130 Ariz. 210, 212, 635 P.2d 498, 500 (1981) ("In dealing with sentencing we are not dealing with the Double Jeopardy Clause"). Should this occur, Rule 17.4(e), Arizona Rules of Criminal Procedure, permits either party to with-

draw from the agreement. *State v. Corno,* 179 Ariz. 151, 153–54, 876 P.2d 1186, 1188–89 (App.1994) (recognizing the applicability of Rule 17.4(e) to the State although the rule only mentions defendants). If either party withdraws, the agreement is void and the parties are returned to their original positions. *See Dominguez,* 140 Ariz. at 331, 681 P.2d at 914. If neither party elects to withdraw, the court may proceed to impose a sentence within the legal range. *Id.*

¶ 9 The State contends that Rule 17.4(d) and (e), as well as paragraph seven of the plea agreement, which tracks these rules,[1] authorized the court to grant the motion to withdraw because the court effectively rejected the sentencing provisions of the agreement by expressing dissatisfaction with the constraint imposed by *Blakely.* We disagree.

¶ 10 Rule 17.4(d) and (e) and paragraph 7 of the agreement apply only if the court **rejects** the sentencing provisions set forth in the agreement. Here, the trial court did not reject a stipulated sentence. Rather, it simply expressed that it was constrained by *Blakely* in the exercise of its discretion to impose a term of incarceration. Additionally, because the term of incarceration proposed in the agreement was the statutory sentencing range, which would apply upon Aragon's conviction regardless of the agreement, the court could not validly reject that sentencing provision. *See State v. Jordan,* 25 Ariz.App. 31, 32, 540 P.2d 762, 763 (1975) (holding that after court accepted guilty plea it could not impose sentence beyond the legal range specified for the crime underlying the plea).

¶ 11 The State next argues that withdrawal was appropriate because Aragon breached the terms of the plea agreement and frustrated its purpose by refusing to waive her Sixth Amendment right to have a jury find any aggravating factors. The State is correct in contending that it can withdraw from a plea agreement after jeopardy has attached if a defendant breaches his or her obligations under the agreement. *Coy,* 200 Ariz. at 444, ¶ 5, 27 P.3d at 801. "Courts have found the breach constitutes a waiver of ... double jeopardy protections...." *Id.* However, we do not discern a breach of the agreement by Aragon.

¶ 12 The State contends that because Aragon pleaded guilty to avoid putting the victim through the trauma of a jury trial, Aragon's refusal to waive her Sixth Amendment rights breaches her agreement not to subject the victim to a trial, thereby permitting the State to withdraw from the agreement. We disagree. Aragon waived her right to a jury trial for the guilt phase of the proceedings. She did not agree to waive any right to a jury trial for the sentencing phase should the law require one before an aggravated sentence can be imposed. Thus, she did not breach any term of the agreement.

¶ 13 The real source of the State's concern with the plea agreement is the change in law reflected by *Blakely.* But a change in the law between the time a plea is accepted and sentencing is not a sufficient reason for withdrawal. *State v. Nunez,* 109 Ariz. 408, 411, 510 P.2d 380, 383 (1973) ("A plea bargain properly entered into and adhered to by the parties should not be set aside because of changes in the law occurring after the plea.").

¶ 14 The State finally argues that withdrawal is appropriate under the contract doctrine of "impracticability," which permits a party to void a contract when subsequent events impede either party's performance. *See 7200 Scottsdale Rd. Gen. Partners v. Kuhn Farm Mach., Inc.,* 184 Ariz. 341, 345, 909 P.2d 408 412 (App.1995); Restatement (Second) of Contracts § 261 (1981). According to the State, *Blakely* has made performance of the plea agreement impractical be-

---

1. Paragraph 7 provides, in relevant part, as follows:

    If after accepting this plea the court concludes that any of the plea agreement's provisions regarding the sentence or the term and conditions of probation are inappropriate, it can reject the plea. If the court decides to reject the plea agreement provisions regarding sen-tencing, it must give both the state and the Defendant an opportunity to withdraw from the plea agreement. In case this plea agreement is withdrawn, all original charges will automatically be reinstated. The Defendant in such case waives and gives up her right to a probable cause determination on the original charges.

cause the court may no longer impose a sentence greater than the presumptive sentence. We disagree for two reasons. First, while *Blakely* limits the sentence that the court may impose in this case based on its own findings, the decision does not prevent the court from imposing a sentence that falls within the range agreed by the parties and set forth in the plea agreement. Pursuant to *Blakely,* the maximum sentence the court may impose absent jury findings must be based only on "the facts ... admitted by the defendant." *Blakely,* 124 S.Ct. at 2537. In Arizona the "maximum sentence" the court may impose absent additional findings is the "presumptive term." *See* A.R.S. § 13–701 (2001). Thus, no impediment exists preventing the court from imposing a presumptive or mitigated sentence, both of which were contemplated in the plea agreement.

¶ 15 Second, *Blakely* does not impede the imposition of an aggravated sentence because the court can convene a jury to find facts that may support imposition of an aggravated sentence. The Double Jeopardy Clause is not implicated in the sentencing phase even though the court has accepted the plea. *Smith,* 130 Ariz. at 212, 635 P.2d at 500 (citing *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Additionally, although the statutory sentencing scheme does not currently provide for convening a jury trial during the sentencing phase of a non-capital case, nothing in our rules or statutes prohibits the court from doing so. *See State v. Johnson,* 183 Ariz. 358, 360, 903 P.2d 1116, 1118 (App.1995) (concluding court may convene a second jury to try allegation of prior convictions as nothing in rules or statutes prohibits practice). Thus, to assist the court in the exercise of its jurisdiction to sentence Aragon, the court may utilize its inherent authority to convene a jury trial on the existence of facts that may support imposition of an aggravated sentence. *See Acker v. CSO Chevira,* 188 Ariz. 252, 254, 934 P.2d 816, 818 (App.1997) (quoting *State v. Superior Court,* 39 Ariz. 242, 247–48, 5 P.2d 192, 194 (1931)) ("A court's inherent authority 'may be defined as such powers as are necessary to the ordinary and efficient exercise of jurisdiction.' ").

## CONCLUSION

¶ 16 For the foregoing reasons, we accept jurisdiction and grant relief by vacating the trial court's order, which permitted the State to withdraw from a plea agreement entered with Aragon and previously accepted by the court. In light of *Blakely,* the maximum sentence the court may impose absent jury findings must be based only on the facts admitted by Aragon. However, the court may convene a jury to find any facts supporting imposition of an aggravated sentence.

CONCURRING: SUSAN A. EHRLICH and JON W. THOMPSON, Judges.